**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KIMBERLY S. YABLONSKI

Plaintiff,

- v -                                                              Civ. No. 6:03-CV-414
                                                                        (FJS/RFT)

COMMISSIONER OF SOCIAL SECURITY,
                                                     Defendant.

**APPEARANCES:**                                **OF COUNSEL:**

AMDURSKY, PELKY LAW FIRM                   GREGORY R. GILBERT, ESQ.
Attorney for Plaintiff
26 East Oneida Street
Oswego, NY 13126

HON. GLENN T. SUDDABY                       WILLIAM H. PEASE
United States Attorney for the Northern District of NY   Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

In this action, Plaintiff Kimberly S. Yablonski moves, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), for a review of a decision by the Commissioner of Social Security denying her application

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Based upon the

following discussion, this Court recommends that the Commissioner's decision denying Social Security

---

[1] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security Benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 6 & 7.  The matter was referred to the undersigned for Report-Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

benefits be **vacated** and the matter **remanded**.

## I.  BACKGROUND

### A.  Claimant's History

Kimberly S. Yablonski, born on June 4, 1967, was thirty-four years old at the time she filed for Social Security benefits.[2]  Dkt. No. 5, Admin. Tr. [hereinafter "Tr."] at p. 30.  She lives with her husband and son in a two-story house.  *Id.*  Yablonski has her high school degree and attended a trade school for approximately six months to study "office practice."  *Id.*  She last worked in 1994 as a store auditor for Fay's Drugs and twice attempted to work, but, because of her symptomology, was unsuccessful in her attempts.  *Id.* at pp. 31-32.  Previously, she worked as a supermarket produce handler, gas station attendant, and a cashier at Ames.  *Id.* at pp. 32 & 74.  Yablonski claims a disability due to carpal tunnel syndrome, rotary cuff injury, reflex sympathetic dystrophy[3] ("RSD"), arthritis, and obesity.  *Id.* at pp. 54, 71, 73, & 338.

### B.  Procedural History

On April 19, 2001, Yablonski protectively filed for DIB and SSI benefits alleging a disability onset date of September 1, 1994.[4]  Tr. at pp. 61-63, 67, & 329-33.  The applications were denied initially.  *Id.* at pp. 49-54 & 334-38.  On December 4, 2002, a Hearing was held before Administrative

---

[2] Yablonski previously filed an application for disability benefits on December 4, 1998, which was denied on February 25, 1999.  Tr. at pp. 18 & 67.  It appears that she did not appeal the denial.  *See id.*  At the Hearing before Administrative Law Judge ("ALJ") Dennis O'Leary, Plaintiff clarified that she sought a "re-opening" of that prior application.  Tr. at p. 44.  The ALJ did not address this request in his decision and Plaintiff does not argue before this Court that such omission was erroneous or provides a basis for remand.  Thus, this Court will not consider the issue of re-opening the prior application.

[3] Reflex sympathetic dystrophy is "a series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 520-21 (29th ed. 2000).

[4] At the Hearing before ALJ O'Leary, Plaintiff's counsel clarified that Yablonski sought a period of disability beginning on May 25, 1999.  Tr. at pp. 19 & 45.

Law Judge ("ALJ") Dennis O'Leary, who, on December 24, 2002, issued an unfavorable decision against Yablonski. *Id.* at pp. 18-48. On March 11, 2003, the Appeals Council concluded there was no basis under the Regulations to grant Yablonski's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. *Id.* at pp. 5-8. Exhausting all her options for review through the Social Security Administration's tribunals, Yablonski now brings this appeal.

### C.  Medical History

After reportedly sustaining an injury at work on January 14, 1993, Yablonski complained of right wrist and thumb pain, although she claimed to have noticed these symptoms for years prior to her injury. Tr. at p. 115. Thereafter, she stated to Ruth McDonald, R.P.A., that she experienced pain in her right wrist, hand, forearm, and elbow. *Id.* at pp. 106-14. Nerve conduction studies performed on January 15, 1993, were compatible with mild carpal tunnel syndrome of the right hand.[5] *Id.* at p. 112. She received a cortisone injection and underwent physical therapy. *Id.* at pp. 112-13 & 115.

From August 1993 to March 1995, Yablonski saw Walter Short, M.D., an orthopedist, for purposes of workers' compensation. *Id.* at pp. 132-48. During that time, Yablonski's right wrist discomfort generally increased. *Id.* Nerve conduction studies performed in September 1993 and May 1994 were interpreted by Dr. Short, David M. Bierwagen, PT, and Stephen R. Lebduska, M.D., as being normal. *Id.* at pp. 133, 135, 138-39, & 141-43. On September 6, 1994, Dr. Short noted that Yablonski's physical examination was consistent with carpal tunnel syndrome and opined that she was no longer able to work. *Id.* at p. 135. On March 7, 1995, Yablonski reported "persistent discomfort" in her forearm which was not relieved by occupational therapy. *Id.* at p. 137. At that point, Dr. Short

---

[5] Carpal tunnel syndrome is "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1626 (29th ed. 2000).

commented that he was "at a loss to explain her discomfort" and referred her to Michael Nancollas, M.D., an orthopedic surgeon. *Id.*

From April 1995 to June 2002, Yablonski saw Dr. Nancollas. *Id.* at pp. 181-219. Dr. Nancollas initially diagnosed Yablonski as suffering from right cumulative trauma disorder with flexor tenosynovitis[6], carpal tunnel syndrome, and rotator cuff strain, which were occupationally related. *Id.* at p. 216. In April and May of 1995, Dr. Nancollas administered cortisone injections into Yablonski's shoulder and right carpal tunnel. *Id.* at pp. 212-13 & 215. However, by July 1995, the effects of the cortisone injections wore off. *Id.* at p. 211. On August 31, 1995, Dr. Nancollas performed arthroscopic acromioplasty on her right shoulder and carpal tunnel release on her right hand. *Id.* at pp. 217-19. Due to Yablonski's continued pain, she subsequently received more cortisone injections into her shoulder and carpal tunnel. *Id.* at pp. 196, 202, & 207. Dr. Nancollas also referred Yablonski for pain modification/control sessions with a psychologist. *Id.* at p. 189. He also referred her for physical therapy, which she attended regularly, but stopped because it was no longer beneficial. *Id.* at p. 203. During the time Dr. Nancollas treated Yablonski, he prescribed various medications such as Ultram, Flexeril, Darvon, and Celebrex.[7] *Id.* at pp. 187 & 200-01. Also during this time, Dr. Nancollas consistently opined that Yablonski was disabled to varying degrees. *Id.* at pp. 132-48 & 253.

On June 19, 2002, Dr. Nancollas completed a Medical Assessment Form in which he stated that Yablonski's diagnosis was bilateral arm cumulative trauma and that her prognosis was "poor." *Id.* at p. 181. He indicated that Yablonski could lift and carry up to ten pounds occasionally, could "never"

[6] Tenosynovitis is the "inflammation of a tendon sheath." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1668 (29th ed. 2000).

[7] Ultram and Darvon are pain relievers. PHYSICIANS' DESK REFERENCE 402, 2553 (59th ed. 2005). Flexeril relieves muscle spasms. *Id.* at 1931. Celebrex is a pain reliever and is also indicated for the relief of signs and symptoms of osteoarthritis as well as rheumatoid arthritis. *Id.* at 3097.

perform simple grasping and fine manipulation, and had limited shoulder range of motion and poor grip strength. *Id.* at pp. 182 & 183. Regarding postural activities, he indicated that Yablonski could "never" crouch or crawl, but could occasionally stoop. *Id.* at p. 184. Regarding physical functions, Dr. Nancollas opined that Yablonski could perform handling occasionally and feeling frequently, but could never perform reaching, pushing, or pulling. *Id.*

While treating with Dr. Nancollas, Yablonski was examined on multiple occasions between January 1996 and December 2000 by Joseph E. Ortiz, M.D., an orthopedic surgeon. *Id.* at pp. 220-48. In his examination reports, Dr. Ortiz noted Yablonski's repeated complaints of pain in her shoulders, arms, elbows, forearms, hands, and fingers. *Id.* at pp. 227, 233, 237, & 242. Dr. Ortiz diagnosed Yablonski as suffering from impingement syndrome[8] of the left shoulder; status post endoscopic right carpal tunnel release and arthroscopic acromioplasty[9] of the right shoulder; left carpal tunnel syndrome; RSD, upper extremities; and fibromyalgia.[10] *Id.* at p. 220. On September 18, 2000, Dr. Ortiz opined that Yablonski "should avoid all repetitive motion with the upper extremities [and] she should not do lifting with those extremities over ten to 15 pounds, especially overhead[.]" *Id.* at p. 272.

On August 2, 2001, Kalyani Ganesh, M.D., a consultative examiner, conducted an orthopedic examination of Yablonski. *Id.* at pp. 287-91. Dr. Ganesh noted that Yablonski stated she couldn't work "due to constant pain in the shoulders, shooting down the elbows to the wrist and hands." *Id.* at p. 287.

---

[8] Impingement syndrome is "a common condition affecting the shoulder often seen in aging adults. The condition is closely related to shoulder bursitis and rotator cuff tendonitis. . . . The pressure within the muscles increases, which results in compression and loss of blood flow in the small blood vessels. When the blood flow decreases, the muscle tissue begins to fray like a rope." Definition *available at* www.medicinenet.com.

[9] Acromioplasty is the "surgical removal of the anterior hook of the acromion to relieve mechanical compression of the rotator cuff during movement of the glenohumeral joint; called also *anterior acromioplasty*." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 20 (29th ed. 2000).

[10] Fibromyalgia is pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 673 (29th ed. 2000).

Based on the examination, Dr. Ganesh concluded that Yablonski was status post right rotator cuff and right carpal tunnel release surgery, and that her prognosis was stable.  *Id.* at pp. 289-90.  Dr. Ganesh opined that Yablonski had no limitations as to sitting, standing, walking, climbing, or bending, but that she was limited mildly in lifting, carrying, pushing, pulling, and repetitive handwork.  *Id.* at p. 290.

Also on August 2, 2001, Kristen Barry, Ph.D., a consultative examiner, conducted a psychiatric evaluation of Yablonski.  *Id.* at pp. 292-96.  Dr. Barry observed that Yablonski had "difficulty handling stress, dealing with her physical limitations, as well as, other family issues."  *Id.* at p. 295.  She diagnosed Yablonski as suffering from adjustment disorder with depressed mood, but concluded that her prognosis "from a psychological standpoint is good."  *Id.*

On August 22, 2001, Thomas Harding, Ph.D., completed a Psychiatric Review Technique Form.  *Id.* at pp. 301-14.  He indicated that under Listing 12.04, Affective Disorders, Yablonski had "mild" restrictions of activities of daily living and "mild" difficulties in maintaining concentration, persistence, or pace.  *Id.* at p. 311.  He also indicated that Yablonski had no difficulties in maintaining social functioning and no repeated episodes of decompensation.  *Id.*

On September 13, 2001, a Physical Residual Functional Capacity ("RFC") Assessment was completed by S. Morey, whose credentials are unknown.  *Id.* at p. 315-21.  It was indicated that Yablonski could lift and/or carry up to twenty pounds occasionally; lift and/or carry up to ten pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of less than about six hours in an eight-hour workday; and was unlimited in her abilities to push or pull.  *Id.* at p. 316.  It was also indicated that Yablonski was limited to "occasionally" climbing, balancing, stooping, kneeling, crouching, and crawling.  *Id.* at p. 317.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3),[11] the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

The standards for determining disability under Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), and Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human*

---

[11] Section 1383 makes section 405(g) applicable to the SSI program and provides the basis for this Court's jurisdiction and limitation of its review.

*Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  To be considered disabled within the meaning of the

Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  A disabling impairment is defined as "an impairment that

results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 1382c(a)(3)(D).

Furthermore, the claimant's physical or mental impairments must be of such severity

> that he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id*. at § 1382c(a)(3)(B).

In this regard, "work which exists in the national economy" means "work which exists in significant

numbers either in the region where such individual lives or in several regions of the country."  *Id.*

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis

set forth in the Social Security Administration Regulations.  20 C.F.R. §§ 404.1520 & 416.920.  At Step

One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(i) &

416.920(a)(4)(i).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and

the inquiry ends.  If the claimant is not engaged in substantial gainful activity, the Commissioner

proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that

significantly limits his or her physical or mental ability to do basic work activities.  20 C.F.R. §§

404.1520(a)(4)(ii) & 416.920(a)(4)(ii).  If the claimant suffers from a severe impairment, the

Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity [12] ("RFC") to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.

---

[12] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ O'Leary's Findings

Yablonski was the only witness to testify at the Hearing.  Tr. at pp. 26-48.  In addition to such testimony, the ALJ had Yablonski's medical records consisting of treatment reports and opinions from various treating, examining, and/or consulting physicians, including, 1) Walter Short, M.D., Treating Orthopedist; 2) Michael P. Nancollas, M.D., Treating Orthopedic Surgeon; 3) Joseph E. Ortiz, M.D., Examining Orthopedic Surgeon; 4) Ruth E. McDonald, R.P.A.; 5) Kalyani Ganesh, M.D., Orthopedic Consultative Examiner; 6) Kristen Barry, Ph.D., Psychiatric Consultative Examiner; 7) Thomas Harding, Ph.D., Non-Examining Agency Psychiatric Review Technique Form; and 8) Physical RFC Assessment completed by S. Morey, a non-examining individual whose credentials are unknown. *Id.* at pp. 106-327.

Using the five-step disability evaluation, ALJ O'Leary found that 1) Yablonski had not engaged in any substantial gainful activity since the alleged onset date; 2) Yablonski's neck pain, shoulder pain, upper extremity numbness, and bilateral knee arthritis were severe impairments; 3) these medically determinable impairments did not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) Yablonski has a RFC to perform a full range of sedentary work, and using the Dictionary of Occupational Titles as a reference, Yablonski can perform her past relevant work as an auditor and therefore was not disabled.  Tr. at pp. 18-25.  After reviewing the administrative transcript, the Court finds that the ALJ failed to apply the correct legal standards and his findings are not supported by substantial evidence of record.

### D.  Yablonski's Contentions

Yablonski asserts several bases in support of her request that the Commissioner's decision be reversed.  First, Yablonski claims that the ALJ erred by failing to consider her "extreme obesity" in connection with her bilateral knee arthritis, and by failing to consider the effect of her obesity combined with Listing 1.02B.  Second, Yablonski contends that the ALJ erred in assessing her RFC in that no substantial evidence supports the ALJ's finding that she could perform the full range of sedentary work and thus return to her past relevant work as an auditor.  Further, Yablonski claims that in assessing her RFC, the ALJ erred in failing to defer properly to her treating physician, Dr. Nancollas, in accordance with the Treating Physician Rule and in not crediting her allegations about  the nature and intensity of her symptoms.  *See generally* Dkt. No. 6, Pl.'s Br.

### 1. Consideration of Plaintiff's Obesity

#### a.  *Obesity in Combination with Severe Impairments*

Yablonski claims that the ALJ erred by failing to consider her "extreme obesity" in connection with her other severe impairments, namely bilateral knee arthritis.  Pl.'s Br. at p. 7.  Defendant argues that nothing in the medical record shows that Yablonski had functional limitations resulting from obesity.  Dkt. No. 7, Def.'s Br. at p. 9.

"Obesity is not in and of itself a disability[.]"  *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing S.S.R. 02-1p: *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049 (S.S.A. 2002)).  Nevertheless, S.S.R. 02-1p provides that a Listing is met "if there is an impairment that, in combination with obesity, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  S.S.R. 02-1p, 2000 WL 628049, at

*-11-*

*5.  However, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . We will evaluate each case based on the information in the case record."  *Id.* at *6.  Moreover, an ALJ is not obligated to single out a claimant's obesity for discussion in all cases.  *Cruz v. Barnhart*, 2006 WL 1228581, at *9 (citing *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)).  "Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . .  When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions."  *Guadalupe v. Barnhart*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) & *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Stemple v. Astrue*, 2007 WL 601566, at *10 (D. Md. Feb. 26, 2007) (noting that "some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity") (citing, *inter alia*, *Cruz v. Barnhart*, 2006 WL 1228581).

      Based on the information in the record, we find that while several examining sources described Yablonski as obese, no source offered a diagnosis of obesity nor suggested that Yablonski's weight contributed to any of her impairments.  *See* Tr. at pp. 134, 141, 288, & 293.   Moreover, no source opined that Yablonski's weight affected her ability to perform basic work activities.  *Id*.  And, we note that at the Hearing, Yablonski neglected to mention her weight when the ALJ asked her to describe why she was unable to work.  *See id*. at p. 33.  In light of the foregoing, we conclude that the ALJ committed no error by not considering Yablonski's weight in connection with her bilateral knee arthritis.  *Hill v. Barnhart*, 410 F. Supp. 2d 195, 218-19 (S.D.N.Y. 2006) (noting that while some of the examining sources noted plaintiff's weight, none of them suggested or concluded that plaintiff's obesity

contributed to any impairment to a disabling degree and holding that the denial benefits stood

notwithstanding the evidence in the record regarding obesity); *see also Coleman v. Shalala*, 895 F.

Supp. 50, 53 (S.D.N.Y. 1995) ("The presence of an impairment . . . is not in and of itself disabling

within the meaning of the Act.") (internal quotation marks and citation omitted).

### b.  *Obesity and Listing 1.02*

Yablonski also contends that the ALJ erred by failing to consider the effect of her "extreme

obesity" combined with Listing 1.02B.  Pl.'s Br. at pp. 7-8; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

While obesity is no longer an independent Listing,[13] it is a factor to be considered in conjunction with

other Listings in the Appendix.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 1.00Q.  As provided in

S.S.R. 02-1p, "obesity may increase the severity of coexisting or related impairments to the extent that

the combination of impairments meets the requirements of a listing."  S.S.R. 02-1p, 2000 WL 628049,

at *5.

Listing 1.02B, which governs major joint dysfunction, provides as follows:

1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:

****

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

*Id.* at § 1.02.

The burden is on the plaintiff to present medical findings which show that his or her

---

[13] The Social Security Administration deleted obesity (Listing 9.09) from the Listing of Impairments in 20 C.F.R. Subpart P, Appendix 1, a change that went into effect on October 25, 1999.  *See* SSR 02-1p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049.

impairments match a Listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998). In order to show that an impairment matches a Listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. *Id.* To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(d). Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints. *Id.*

In this case, the record does not indicate that Yablonski's weight had any effect on her major peripheral joints in each upper extremity. As previously discussed, no medical source suggested that her weight contributed to any of her impairments nor that it would affect her ability to perform basic work activities. Accordingly, Yablonski's claim that her obesity had an effect on Listing 1.02B is unavailing. Therefore we do not find that the ALJ erred by failing to consider the effect of her "extreme obesity" combined with Listing 1.02B.

### 2. Residual Functional Capacity

#### a. Past Work

Yablonski next claims that the ALJ erred when he found she retained the functional capacity to perform sedentary work and could therefore return to her past relevant work as an auditor. In making this assessment, Yablonski contends the ALJ further erred in failing to give full deference to restrictions imposed by Dr. Nancollas and full credibility to Yablonski's allegations regarding the nature and intensity of her symptoms.

-14-

Under Step Four of the disability analysis, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1520 & 416.945; 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. §§ 404.1545(a) & 416.945. "[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); *see also* S.S.R. 82-61, 1982 WL 31387, *Titles II and XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed* (S.S.A. 1982); S.S.R. 82-62, 1982 WL 31386, *Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General* (S.S.A. 1982). Once the demands of the claimant's past relevant work are ascertained, the ALJ must identify the claimant's ability to perform the specific work-related abilities on a function-by-function basis. S.S.R. 96-8p, 1996 WL 374184, at *1, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996).

In assessing Yablonski's RFC, the ALJ concluded that Yablonski was capable of performing the following:

> Based on the foregoing, the undersigned finds that the claimant retains the [RFC] to perform the exertional demands of sedentary work, or work which requires maximum lifting/carrying and pushing/pulling of ten pounds and frequent lifting/carrying and pushing/pulling of five pounds; sitting for six hours and standing and/or walking for two hours in an eight-hour workday. The evidence supports a finding that the claimant is capable of this level of exertion. Moreover, the claimant has no significant non-exertional limitations that would narrow the range of work she can perform.

Tr. at p. 23.

In making the above assessment, the ALJ stated that he assigned "no significant weight" to Dr.

*-15-*

Nancollas's opinion that Yablonski was "fully disabled" because the opinion was not supported by the record and involved an issue reserved to the Commissioner. *Id*. at p. 21.  The ALJ also did not credit Yablonski's subjective allegations regarding pain and other symptoms and the effect on her ability to engage in work activity.  *Id.* at p. 22-23.  Then, utilizing the Dictionary of Occupational Titles as a reference, the ALJ noted that Yablonski's past relevant work as an "auditor" is classified as sedentary work, thus, Yablonski had the RFC to perform her past relevant work "as an auditor as it is normally performed in the general economy."  *Id*. at p. 24.  Based on this finding, the ALJ determined that Yablonski was not disabled.  *Id.*  Moreover, the Commissioner contends that the ALJ's decision is supported by substantial evidence.  Def.'s Br. at pp. 5-7.  Conversely, Yablonski argues that she is unable to perform sedentary work on a sustained basis because of an inability to use her hands on a repetitive basis and an inability to sit six hours in an eight-hour workday.  Pl.'s Br. at p. 14.

In his decision, the ALJ reviewed numerous medical documents in some detail and found that Yablonski could perform sedentary work.  Tr. at pp. 19-23.  However, it is unclear on what evidence the ALJ relied in determining that Yablonski had "no significant non-exertional limitations,"[14] especially in light of the evidence that Yablonski had limited use of her hands.  *See* Tr. at p. 23.  For instance, Yablonski's treating orthopedic surgeon, Dr. Nancollas, indicated that Yablonski could ***never*** use her hands to perform simple grasping or fine manipulation.  *Id.* at p. 183.  He also observed that she had limited shoulder range of motion and poor grip strength.  *Id.* at p. 182.  Similarly, Dr. Ortiz, an examining physician, opined that Yablonski "should avoid all repetitive motion with her upper extremities; [and] she should not do lifting with those extremities over ten to 15 pounds, especially overhead[.]"  *Id.* at p. 272.  Furthermore, even the SSA's own consultive examiner, Dr. Ganesh, opined

---

[14] Non-exertional impairments include, *inter alia*, difficulty performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching.  20 C.F.R. §§ 404.1569a(c)(1)(vi) & 416.969a(c).

that Yablonski had a "mild limitation to lifting, carrying, pushing, and pulling [and a] mild limitation to repetitive handwork." *Id.* at p. 290.

Limitation in the use of one's fingers is a non-exertional impairment, which could affect a claimant's ability to perform the full range of a particular type of work. S.S.R. 83-14, *Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments*, 1983 WL 31254, at *2 (S.S.A. 1983). According to Social Security Ruling ("SSR") 83-14,

> using the fingers and finger tips to work with small objects . . . are considered nonexertional activities. Limitations of these functions can affect the capacity to perform certain jobs at all levels of physical exertion. An entire range of jobs can be severely compromised. For example, section 201.00(h) of Appendix 2 calls attention to the fact that bilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations.

*Id*. at *2.

Moreover, an ALJ is to consider the limiting effects of all impairments, even those that are not severe. 20 C.F.R. §§ 404.1545(e) & 416.945(2).

In the instant case, the ALJ failed to meaningfully address Yablonski's non-exertional limitations as diagnosed by Drs. Nancollas and Ortiz. The ALJ did not specifically address what effect Yablonski's non-exertional limitations might have on the range of work she could perform. Nor did he state why he chose to discredit the treating orthopedic's testimony with respect to those limitations.[15] In sum, there is not substantial evidence to support the ALJ's conclusion that Yablonski has "no significant non-exertional limitations that would narrow the range of work she can perform." Tr. at p. 23. The fact that the ALJ's RFC determination is not supported by substantial evidence is a basis for reversal.

---

[15] This point is developed further in the next subsection.

### b.  Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2);  *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).  However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1527(e)(1) & 416.927(e)(1) (Commissioner provides the ultimate decision on disability).   The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion."  *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d at 80-81.  Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations.  *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. §§ 404.1527(d)(1)-(6) & 416.927(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).  In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so.  20 C.F.R. §§ 404.1527(d)(2) &

416.927(d)(2).

Yablonski claims that the ALJ failed to give controlling weight to the restrictions established in a Medical Assessment Form by her treating orthopedic surgeon, Dr. Nancollas.  Pl.'s Br. at p. 10. In that Form, Dr. Nancollas indicated, *inter alia*, that Yablonski could lift and/or carry up to ten pounds, and that she could **never** perform simple grasping, fine manipulation, reaching, pushing, or pulling with either hand.  Tr. at pp. 182-85.  The Commissioner claims that the Medical Assessment Form, which was completed upon the ALJ's request, was consistent with the ability to perform sedentary work. Def.'s Br. at p. 15.

In his decision, the ALJ pointed out that on one occasion, Dr. Nancollas stated that Yablonski could lift and/or carry up to ten pounds occasionally, yet, prior to that recitation, Dr. Nancollas opined that Yablonski could not use her arms for any significant activity.  Tr. at p. 21.  While the ALJ adopted Dr. Nancollas' opinion with regard to lifting and carrying restrictions, the ALJ did not adopt nor discuss Dr. Nancollas' other opinions regarding Yabolonski's restrictions.  *Id.* at pp. 23 & 183-84.  In failing to adopt or discuss the remaining restrictions set forth by Yablonski's treating physician, Dr. Nancollas, ***and*** further in failing to state supporting reasons for such disregard, the ALJ erred in not adhering to the Treating Physician Rule.  *See* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (noting that the Administration will "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  Moreover, an ALJ may not "pick and choose" those excerpts of the medical reports that support a denial of benefits without explaining why the evidence in support of Plaintiff's claims were rejected.  *Leonovich v. Barnhart*, 246 F. Supp. 2d 199, 209 (W.D.N.Y. 2003) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Accordingly, the ALJ's failure to adhere to the Treating Physician Rule provides a basis for reversal.

*c.  Credibility*

Under 20 C.F.R. §§ 404.1529(a) and 416.929(a), a claimant's description of symptoms and subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. 20 C.F.R. at §§ 404.1529(c) & 416.929(c).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id.*  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)).  In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404. 1529(c)(3) & 416.929(c)(3).

In assessing Yablonski's credibility, the ALJ made the following determination:

The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the treating and examining practitioners. The claimant's daily activities are very functional. She takes care of her child and does most of the household chores although her husband does help with the heavy thins [sic]. She regularly drives a car. Her limits are that she cannot lift her left arm over her head and her arms get numb at night if she worked hard during the day. She also claims to have arthritis in both her knees, but admitted that she could walk between ½ and 1 mile if she had to but it would not be without pain. Dr. Ganesh noted full range of motion of her knees bilaterally with no joint effusion, inflammation, or instability. Dr. Ganesh also noted full bilateral grip strength and full dexterity. The claimant's treating doctor also noted a full range of motion. The claimant takes no medication and only sees her treating physician every 6 months or so. Her daily activities, in addition to doing housework, also consist of reading, watching television and occasional use of the computer. The medical records simply do not support the claimant's complaints.

Tr. at p. 23.

We find that the ALJ properly found, and sufficiently explained, that Yablonski's subjective testimony of disabling pain and limitations was not credible. The ALJ assessed that Yablonski's daily activities, conservative medical treatment, inconsistent statements, and medical assessments of the treating physician and consultative examiner contradict Yablonski's claims of disabling plain so as to discredit her testimony. *Id*. at p. 23.

Yablonski testified that depending on how she feels in the morning, she will "try to do a load of laundry . . . . [and] do some dishes for five minutes," but has to stop due to cramping in her hand. *Id*. at p. 39. If she is unable "do anything," she sits and watches television. *Id.* In her application for

benefits, she noted that her current daily activities also included "sitting on the porch," as well as "breakfast [and] guidance of son for school, household cleaning if capable, make sure son gets home from school, review his day, discuss supper plans with husband, prepare if able, help son with homework, baths, T.V., [and] bed." *Id.* at pp. 83 & 87.  At the Hearing, Yablonski testified that she drives "[a]t least *three times a week* . . . to town which is a half a mile away, to do small errands." *Id.* at p. 43.  Thus, Yablonski's testimony as to her pain is belied by her own statements about her routine activities.

Yablonski's conservative medical treatment further discredits her testimony.  As the ALJ noted, she testified to seeing her treating physician "once every six months, just to let him know what's going on." *Id.* at p. 46.  Moreover, Yablonski does not take any medication for her symptoms of pain.  *Id.* While Yablonski argues in her Brief that she discontinued taking medications because of side effects, her testimony contradicts this contention.  She testified that she stopped taking Darvocet because "***it just, it doesn't work*** . . . . [Dr. Nancollas] said just ***quit taking it if it's not doing anything***." *Id.* at p. 36 (emphasis added).  While she later stated that Darvocet caused her upset stomachs, she never stated that she stopped taking the medication ***because of side effects***.  *Id.* at p. 37.  In fact, she reiterated that she "had tried several medications, for the swelling up and all of that, ***but nothing has ever worked***." *Id.* (emphasis added).  An individual's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . " S.S.R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing The Credibility of an Individual's Statements*, 1996 WL 374186, at *7 (S.S.A. 1996).

The ALJ also found it significant that while Yablonski claimed that she had arthritis in both knees and stated that she could walk only ten feet before her knees started to hurt, she admitted that she

could walk between half of a mile and one mile "if she had to but it would not be without pain."  Tr. at p. 23.  He also pointed out that Dr. Ganesh noted full range of motion of her knees with no joint effusion, inflammation, nor instability.  *Id.*  We note that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  S.S.R. 96-7p, 1996 WL 374186, at *5.

Disability requires more than the inability to work without pain.  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  Here, the ALJ has sufficiently referred to substantial evidence, which demonstrates that although pain my exist, Yablonski's pain was not so severe as to be disabling.  Thus, the ALJ correctly determined that Yablonski's testimony of pain was not credible.

### E.  Reverse or Remand

In determining the final disposition of this matter, the most equitable judgment must be implemented.  The Court has authority to reverse with or without remand.  42 U.S.C. § 405(g).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order.") (cited in *Rosa v. Callahan*, 168 F.3d at 82-83).  Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  *Parker v. Harris*, 626 F.2d at 235; *see also Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000); *Rosa v. Callahan*, 168 F.3d at 83 (remand solely for calculation of benefits is warranted when the court has no "apparent basis to conclude that a more complete record might support the Commissioner's decision").

"Upon a finding that an administrative record is incomplete or that an ALJ has applied an

improper legal standard, we generally . . . remand the matter to the Commissioner for further consideration." *Curry v. Apfel*, 209 F.3d at 124.  Accordingly, because the ALJ failed to adequately develop the record in reaching a determination of Plaintiff's RFC, the Court need not – indeed, cannot – reach the question of whether the Commissioner's denial of benefits was based on substantial evidence.  The case should be remanded to the Commissioner to further develop the record and reevaluate whether Plaintiff's ability to perform her past relevant work as an auditor was significantly diminished by her non-exertional impairments.  As such, the Commissioner shall adhere to his Regulations and properly apply the Treating Physician Rule with regard to the effect, if any, Plaintiff's non-exertional impairments have on her RFC.  If it is determined that Yablonski cannot perform her past work and her ability to perform sedentary work is significantly diminished by her non-exertional limitations, then the Commissioner should be required to present testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with Yablonski's limitations. *See Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999) (remanding when ALJ failed to adequately consider evidence that Plaintiff suffered from non-exertional impairments to her hand and arm).

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **VACATED** and the matter **REMANDED** to the agency for further consideration pursuant to Sentence Four of 42 U.S.C. § 405(g); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

IT IS SO ORDERED

Dated: January 31, 2008
      Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge